RECEIVED

FEB 2 8 2023

CLERK, U.S. DISTRICT COURT
ST. PAUL, MINNESOTA

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

**Theressa A. Burns**

          Plaintiff(s),

vs.

**Denis McDonough, Secretary, Department of
Veterans Affairs; Minneapolis Veterans Affairs
Medical Center; Patrick J. Kelly; Brian Taylor;
Michael J. Armstrong; and Mandelaigh Smoot,**

          Defendant(s).

Case No. 23 CV 478 NEB|DJF
(To be assigned by Clerk of District
Court)

DEMAND FOR JURY
TRIAL
  YES ✓  NO ☐

(Enter the full name(s) of ALL plaintiffs
and defendants in this lawsuit. Please
attach additional sheets if necessary.)

## EMPLOYMENT DISCRIMINATION COMPLAINT

### PARTIES

1. List your name, address and telephone number. Do the same for any additional plaintiffs.

  a. **Plaintiff**

| | |
|---|---|
| Name | **Theressa A. Burns** |
| Street Address | **795 Butternut Avenue** |
| County, City | **Ramsey, Saint Paul** |
| State & Zip Code | **Minnesota, 55102** |
| Telephone Number | **651-292-9648** |

2. List all defendants. You should state the full name of the defendant, even if that defendant is
a government agency, an organization, a corporation, or an individual. Include the address

SCANNED
FEB 2 8 2023
U.S. DISTRICT COURT ST. PAUL

where each defendant may be served.  Make sure that the defendant(s) listed below are identical to those contained in the above caption.

a. Defendant No. 1

    Name    **Denis McDonough**

    Street Address    **Secretary, Department of Veterans Affairs**

    County, City    **810 Vermont Avenue NW**

    State & Zip Code    **Washington, D.C. 20420**

b. Defendant No. 2

    Name    **Minneapolis Veterans Affairs Medical Center**

    Street Address    **Office of the General Counsel, One Veterans Drive**

    County, City    **Hennepin, Minneapolis**

    State & Zip Code    **Minnesota, 55417**

**NOTE: IF THERE ARE ADDITIONAL PLAINTIFFS OR DEFENDANTS, PLEASE PROVIDE THEIR NAMES AND ADDRESSES ON A SEPARATE SHEET OF PAPER. Check here if additional sheets of paper are attached: [✓] Please label the attached sheets of paper to correspond to the appropriate numbered paragraph above (e.g., Additional Defendants 2.c., 2.d., etc.)**

JURISDICTION

The Court has jurisdiction over this action under 28 U.S.C. § 1331.

3. This employment discrimination lawsuit is based on (check only those that apply):

a. [ ] Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et. seq.*, for employment discrimination on the basis of race, color, religion, gender, or national origin. **NOTE:** *In order to bring suit in federal district court under Title VII, you must first obtain a right to sue letter from the Equal Employment Opportunity Commission (EEOC).*

b. [✓] Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621, *et. seq.*, for employment discrimination on the basis of age (age 40 or older). **NOTE:** *In*

*order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file charges with the Equal Employment Opportunity Commission (EEOC).*

c. ☐ Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101, *et. seq.*, for employment discrimination on the basis of disability. **NOTE:** *In order to bring suit in federal court under the Americans with Disabilities Act, you must first obtain a right-to-sue letter from the Equal Employment Opportunity Commission (EEOC).*

d. ☐ Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701, *et. seq.*, for employment discrimination on the basis of a disability by an employer which constitutes a program or activity receiving federal financial assistance. **NOTE:** *In order to bring suit in federal district court under the Rehabilitation Act of 1973, you must first file charges with the appropriate Equal Employment Office (EEO) representative or agency.*

e. ☑ Other (Please describe.)

**Wrongful and Unlawful Termination**
**Breach of Employment Contract**
**Prohibited Action for Protected Activity**
**Retaliation**

4. If you are claiming that the discriminatory conduct occurred at a location other than the defendant's address above, please provide the following information on where the conduct occurred:

     (Street Address)                    (City/County)            (State)            (Zip Code)

5. When did the discrimination occur?  Please give the date or time period:

    **The time period stems prior to 2018 to July 31, 2020 with Removal from Office.**

ADMINISTRATIVE PROCEDURES

6. Did you file a charge of discrimination against the defendant(s) with the Equal Employment Opportunity Commission or other federal agency?

    a. ☑ Yes        Date filed: **September 10, 2020**

    b. ☐ No

7. Have you received a Notice of Right-to-Sue Letter?

a. ☑ Yes        If yes, please attach a copy of the letter to this complaint.

b. ☐ No

## NATURE OF THE CASE

8. The conduct complained of in this law suit involves (check only those that apply):

a. ☐ Failure to hire me

b. ☑ Termination of my employment

c. ☑ Failure to promote me

d. ☐ Failure to accommodate my disability

e. ☑ Terms and conditions of employment differ from those of similar employees

f. ☑ Retaliation

g. ☑ Harassment

h. ☑ Other conduct (please specify):

**Prohibited action in violation of Minnesota Statute 181.932, Subdivision 1(4) the employee, in good faith, reports a situation in which the quality of health care services provided by a health care facility, organization, or health care provider violates a standard established by federal or state law or a professionally recognized clinical standard and potentially places the public at risk of harm.**

i. Did you complain about this same conduct in the charge of discrimination, referred to in number 6 above?

☑ Yes  ☑ No

9. I believe that I was discriminated against because of my (check all that apply):

a. ☐ Race

b. ☐ Religion

c. ☐ National origin

4

d. ☐ Color

e. ☐ Gender

f. ☐ Disability

g. ☑ Age (my birth year is: **1957**      )

h. ☑ Other (please specify):

**Reporting of Unsafe Patient Practices**
**Reporting of violations in employment contract rights**
**Reporting of violations of Copyrights under 17 U.S.C. section 106**

i. Did you state the same reason(s) in the charge of discrimination, referred to in number 6 above?

☑ Yes      ☐ No

Describe in the space provided below the basic facts of your claim. The description of facts should include a specific explanation of the conduct that you believe is discriminatory and describe how each defendant is involved in the conduct (i.e. how, where, and when). Each paragraph must be numbered separately, beginning with number 10. Please write each allegation of discrimination in a separately numbered paragraph.

10.

**Plaintiff Theressa A. Burns was a permanent employee of the Minneapolis VA Geriatric Research, Education & Clinical Center (GRECC) since 1987, and was promoted to the GS-12 GRECC Occupational Therapist Clinical Specialist position/status in 2010. She was hired into the GRECC in 1987 by James A. Mortimer, PhD, to incorporate her already owned Cognitive Performance Test (TX 6-006-512) in a longitudinal study of disease progression in Veterans with Alzheimer's disease. Please see Exhibit A.**

**11.    The "Cognitive Performance Test" (hereinafter referred to as "CPT") measures cognitive functions in the performance of routine tasks in a clinic setting. The CPT comprises seven tasks designed to elicit the cognitive abilities available to an individual in performing each task, and uses the average score. The tasks are titled: Medbox, Shop, Toast, Phone, Wash, Dress & Travel. With serial measures, the score tracks change in performance over time, and informs family and referring physicians on research-based strategies for stage-specific care. The GRECC specialty service included family observation of the test and participation in care planning with disease progression; and provided access to community resources and Veteran benefits to assist in that care. The GRECC specialty service also served as a clinical training and education program for physician residents and occupational therapy student trainees.**

5

12.    The Minneapolis GRECC was one of the first six GRECCs initiated by the Veterans Health Administration (VHA) in 1975.  The purpose was to attract credentialed scientists and clinicians to the field of Geriatrics and government service to increase applied knowledge of aging and geriatric service delivery.  GRECCs have a primary responsibility for translating new and existing geriatric knowledge and skills into clinical practice through their actions as local, regional, and national resources for education and training (VHA GRECC Handbook 1140.08.1).

**Attach additional sheets of paper as necessary.**
**Check here if additional sheets of paper are attached:** ☑
**Please label the attached sheets of paper as Additional Facts and continue to number the paragraphs consecutively.**

REQUEST FOR RELIEF

State briefly and exactly what you want the Court to do for you and the amount of monetary compensation, if any, you are seeking.

**In federal EEO law, a Plaintiff who prevails on a claim of discrimination is entitled to full relief which places her in the position she would have been in absent the agency's discriminatory conduct.  Plaintiff seeks compensation in back pay, and front pay, including raising the promotion rating and all retirement benefits she would have received had she achieved the higher promotion rating.  Back pay from February 2020 at the GS-13 rating calculates to date in excess of $200, 000.  Plaintiff also seeks attorney's fees and costs, and that the adverse materials relating to the discriminatory practices be expunged from the agency's records.**

Date: **February 28, 2023**                _Theressa A. Burns_
                                                          Signature of Plaintiff

Mailing Address          **Theressa A. Burns**
                                   **795 Butternut Avenue**
                                   **Saint Paul, MN 55102**

Telephone Number    **651-292-9648**

Note:   All plaintiffs named in the caption of the complaint must date and sign the complaint and provide his/her mailing address and telephone number.  Attach additional sheets of paper as necessary.

Print

Theressa A. Burns, Plaintiff
Additional Sheets

23 CV 478 NEB/DJF

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Theressa A. Burns,

                    Plaintiff,

vs.

Secretary Denis McDonough, Department of Veterans Affairs;
Minneapolis Veterans Affairs Medical Center; Patrick J. Kelly,
Brian Taylor, Michael J. Armstrong, and Mandelaigh Smoot,

                    Defendants.



CLERK, U.S. DISTRICT COURT
ST. PAUL, MINNESOTA

## 2.    ADDITIONAL DEFENDANTS

c.    Patrick J. Kelly
      Director
      Minneapolis Veterans Affairs Medical Center
      One Veterans Drive, Minneapolis, MN, 55417

d.    Brian Taylor
      Staff Attorney
      Minneapolis Veterans Affairs Medical Center
      One Veterans Drive, Minneapolis, MN, 55417

e.    Michael J. Armstrong
      Chief of Staff
      Minneapolis Veterans Affairs Medical Center
      One Veterans Drive, Minneapolis, MN, 55417

f.    Mandelaigh Smoot
      Associate Director/Chief Experience Officer
      Minneapolis Veterans Affairs Medical Center
      One Veterans Drive, Minneapolis, MN, 55417

Theressa A. Burns, Plaintiff
Additional Sheets

## ADDITIONAL FACTS

13.     Plaintiff's official employee contract and position description since 2010 stated: "This is an advanced level Occupational Therapy (OT) position with an expectation of autonomy in carrying out the duties of the position.  The majority of time is dedicated to developing best-practice clinical models of assessment and intervention in Alzheimer's disease and related disorders.  The incumbent provides services in the GRECC Memory Loss Specialty Clinic and conducts evaluation of service delivery through collaborative research with the GRECC team." Please see Exhibit B.

14.     Ms. Burns provided a best-practice service delivery model for the GRECC Memory Loss Specialty Clinic that was based in the CPT assessment and its research-based plans for care.  The clinical service is recognized as an evidenced-based service in numerous publications by the American Occupational Therapy Association (AOTA).  The GRECC OT service was ordered by a physician consult that was billed as a specialty service and reimbursed at a higher rate to the Medical Center.

15.     Plaintiff's official employee contract and position description since 2010 further stated the following official duties:  "Disseminates new knowledge and research findings through publications, presentations, and training and education programs for students, fellows, and professional staff.  Provides educational programs and seminars to community occupational therapists, physicians, geriatricians, and nurse specialists on cognitive-functional changes in dementia and occupational performance assessment and intervention."  Ms. Burns' official Personnel Action Standard Forms, SF50s, categorized the employment contract and Tenure as a permanent position, and the Employer contract under the Agency Master Agreement required cause for termination of employment.  The Master Agreement between the Department of Veterans Affairs and the American Federation of Government Employees under Article 14 Section 1 – Discipline and Adverse Action states that: "No bargaining unit employees will be subject to disciplinary action except for just and sufficient cause." (VA Pamphlet 05-68 P70450).

Theressa A. Burns, Plaintiff
Additional Sheets

16.     In 1992, after Ms. Burns, Dr. Mortimer, and the GRECC performed a validity study of the CPT, the test manual was formally shared through the GRECC with occupational therapists employed by the VA and in the private sector. The CPT manual had been disseminated per the GRECC Mission, free of charge through the GRECC, in educational seminars and to any occupational therapist upon request for over 30 years.

17.     In accordance with her official duties since 2010, Ms. Burns provided the specialty service for Veterans and families and was authorized and encouraged to teach practitioners through GRECC sponsored education programs and publications. GRECC OT education programs were never solicited programs, but rather invited programs scheduled through the GRECC. These education programs were credited to the GRECC as required outreach activities and had been listed on all GRECC Annual Reports since 2010. All performance evaluations of Ms. Burns for these years including 2019 were rated as outstanding for both patient care and for her authorized teaching and publishing activities related to the CPT model of care. Please see Exhibit C.

18.     In 2018, Plaintiff was providing education programs per her official duties on the recent advancements in GRECC CPT research and scores that predict the ability to drive. The research, entitled "Predictive Value of the Cognitive Performance Test for Staging Function and Fitness to Drive in People with Neurocognitive Disorders" was published by the American Journal of Occupational Therapy (AJOT) in 2018. A subsequent journal article was published in 2019: Burns, T. & Haertl, K. Cognitive Performance Test: Practical Applications and Evidence-Based Use. SIS Quarterly, November, Volume 3, Issue 4, AOTA Press. A CPT book chapter was also published in the 2019 AOTA textbook on Functional Cognition, a widely and currently used textbook in academia.

19.     With these new GRECC research publications, the Agency became interested in sharing ownership of the CPT with Ms. Burns. In March of 2019, the Agency asked Ms. Burns to share her intellectual property, the CPT, by filing for a joint Patent with the Agency through the VA Information Technology Transfer Program (VHA Directive 1200.18). Plaintiff refused as her copyrights had already been awarded by the Library of Congress as sole author and not a

9

Theressa A. Burns, Plaintiff
Additional Sheets

work for hire. Further, US Patents are only awarded for new inventions and not those already copyrighted and in public use. In her Email correspondence of March 14, 2019, Catherine Kotz, PhD, GRECC Associate Director for Research, advised Ms. Burns to not submit the requested forms to the VA Information Technology Transfer Program. Please see Exhibit D.

20.      During this time, Ms. Burns reported to the Chief of Occupational Therapy, Mandelaigh Smoot, that a clinic coordinator was counseling patients with Alzheimer's on their ability to drive and making referrals for VA road exams. Counseling and referral services are exclusive roles designated by a professional license and by State and Federal laws. The clinic coordinator position was an unlicensed GRECC role. This unskilled counseling led to complaints from Veterans and families and confounded the actual occupational therapy plans for care. Burns reported the safety issues and danger to Veterans taken on the VA road exam, when the stage of impairment and driving history were sufficient enough to recommend retirement from driving and provide the family education services and transportation resources to replace the loss. The excessive VA road exams also caused safety risks for the Occupational Therapist Driving Rehabilitation Specialist in the car giving the exam with the Veteran.

21.      Ms. Burns also reported to Chief Smoot that her patients were not being formally greeted by the GRECC receptionist, or routinely logged into the system as required by policy. Patients were not marked present for their OT appointment because the receptionist was repeatedly and deliberately gone from her desk. This put the Veteran at risk for patient misidentification and at risk for getting lost within the medical center and its medical tracking system.

22.      In October of 2019, an Administrative Investigative Board (AIB) was suddenly initiated by Chief Smoot, to investigate both the clinical practice and the official teaching and publishing activities of Ms. Burns. Mandelaigh Smoot has since been promoted to Associate Director/Chief Experience Officer. The AIB was initiated by Smoot through Brian Taylor, Compliance Officer at that time, who has since been promoted to a Staff Attorney.

Theressa A. Burns, Plaintiff
Additional Sheets

23.     Just prior to the AIB, Chief Smoot contacted Plaintiff regarding an upcoming GRECC education course at the Mayo Clinic on June 8, 2019. In her Email correspondence of May 8, 2019, Ms. Smoot asked for the CPT education program in-house to update her staff. Her Email states: "Is this a course you would be willing to teach here in a couple of sessions so we could get say ¼ of our staff there at a time? I too like their objectives and the way it was designed." Please see Exhibit E. However, in her later testimony before the AIB on November 8, 2019, and in response to Chair Brian Taylor's question: "Ms. Burns testified that she shared her Mayo flier on training with you and that you requested her to provide the training here. Is that a correct statement?" Smoot answered: "Oh, I know that she sent it to me and said that she thought it would be a good idea to do this partnership. I do not know how I responded." (Smoot AIB at 26-27).

24.     Chief Smoot further testified that Plaintiff promoted sales of the CPT in her official capacity and misrepresented her conduct with falsehoods including: "She is getting royalties from a kit that she goes out and presents on in the community and tells the community to buy it." (Smoot AIB at 67-68). However, there were no sales of the CPT ever associated with any GRECC educational programs. Smoot testified that Burns' skills were outdated despite the recent advancements in the clinical practice research published by AOTA. Smoot further testified that the GRECC clinic space where Plaintiff provided the CPT evaluation and patient care services, was being "Decommissioned." In response to Chair Brian Taylor's question: "Does she know about that?" Smoot said: "Probably not." (Smoot AIB at 31).

25.     At that time, the Occupational Therapy Department was undergoing a national upgrade in pay. Chief Smoot mentored much younger occupational therapists to assume the GRECC role of Ms. Burns in other clinics within the hospital. In fact, the occupational therapy clinic that served GRECC patients and families has since been converted to a storage area for IV poles. These younger therapists, like Burns, were classified as clinical specialists, and were then promoted by seniority. Ms. Burns, the most senior occupational therapist clinical specialist on staff at that time was denied the opportunity to apply for the system-wide promotions going on during the AIB. Section 7- Applicability of Noncompetitive Actions of the Agency Master Agreement for Promotions states that the "Promotion of an incumbent that is reclassified to a

11

Theressa A. Burns, Plaintiff
Additional Sheets

higher grade without significant change in duties or responsibilities on the basis of a new
classification standard and meets the legal requirements and qualification standards for
promotion to the higher grade, the incumbent will be promoted." (VA Pamphlet 05-68 P70450).

26.    Just prior to the AIB, Chief Smoot requested that Plaintiff provide the updated
props for the CPT evaluation to the other occupational therapy clinics using the test within the
hospital. Plaintiff donated the props to the medical center when Smoot refused to use VA supply
funds to purchase the props she had requested from Burns. Smoot had requested the CPT props
for the other clinics prior to the AIB, at the same time she had decided to decommission the
GRECC OT clinic space and specialty service of Ms. Burns.

27.    In his testimony before the AIB on November 7, 2019, Plaintiff's supervisor Dr.
McCarten testified in response to Chair Brian Taylor's question: "And who, typically, uses the
CPT here?" McCarten answered: "The GRECC staff. There are seven affiliated clinics,
physician clinicians with the GRECC. Primarily, there had been three of us for a number of
years and we added some recently. But those physicians would order it." McCarten added: "Or
would direct that it be ordered. Often, we have lots of trainees, so residents and fellows would
order it." Taylor asked: "So, they order it, then who actually performs the test?" McCarten
answered: "Theressa Burns." Taylor asked: "Solely?" McCarten answered: "For the GRECC
clinic patients, yes." Taylor asked: "Do we have anyone else in the facility that's trained to do
the CPT test?" McCarten answered: "Yes. I think there are actually several people." (McCarten
AIB at 10-11).

28.    Prior to the AIB, Chief Smoot was allowing her occupational therapy staff to
misuse the CPT evaluation by giving it in parts or by using the Medbox subtask in isolation; a
practice that has no established validity for interpretation. CPT interpretations and practice
applications are based on the total score averaged across all subtask scores. Chief Smoot
testified before the AIB on November 8, 2019, that her intent was to make changes to the CPT to
better fit the test or service delivery model within the arbitrary time constraints and use in
primary care clinics.

Theressa A. Burns, Plaintiff
Additional Sheets

29.    Plaintiff was required to appear twice before the AIB for four hours each on October 11 and November 15, 2019.  Much of the inquiry by Chair Brian Taylor focused on the origination of the CPT and that Burns had recently refused to file for joint Patent rights with the VA.  The inquiry also focused on her official GRECC education programs, and the acceptance of compensation allowed under 5 C.F.R. 2635.807 for teaching Saturday programs.

30.    Paragraph 3 of 5 C.F.R. 2635.807 states: "Exception for teaching certain courses: Notwithstanding that the activity would relate to his official duties of this section, an employee may accept compensation for teaching a course requiring multiple presentations by the employee if the course is offered as part of:  (i) The regularly established curriculum of (A) An Institution of higher education as defined at 20 U.S.C 2891(21); or (ii) A program of education or training sponsored and funded by the Federal Government or by a State or local government which is not offered by an entity described in paragraph (a)(3)(i) of this section."

31.    Per Ms. Burns' official position description and the GRECC mission statement provide all her teaching activities were sponsored by the federal government as the activities were official duties sponsored by and in service of the mission of VA GRECCs (VHA Handbook 1140.08.1).  The AIB reviewed numerous GRECC Annual Reports where Plaintiff's official teaching activities were listed as accomplishments made by the Minneapolis VA GRECC including for FY 2019, at the same time of the AIB.  In fact, the official teaching activities listed for FY 2019 include the Minnesota Occupational Therapy Association (MOTA); Saint Catherine University; and the Mayo Clinic.  Please see Exhibit F.  All of these institutions are also institutions of higher education as defined at 20 U.S.C 2891(21).

32.    Ms. Burns testified within the first four hours before the AIB on October 11, 2019, as to her sole ownership and copyrights in the CPT including the right to public display. In fact, her rights were upheld by a Freedom of Information Act (FOIA) investigation by the Agency in 2005, initiated by the University of Minnesota (UMN).  In 2005, the UMN requested the Minneapolis VA Medical Center to provide the status of the CPT at the facility.  The request was made in response to the ability of the UMN to continue to use a video tape of Veterans performing the Toast subtask of the CPT evaluation, and the status of copyrights.  Ms. Burns had

Theressa A. Burns, Plaintiff
Additional Sheets

initiated a lawsuit against the UMN, to remove the video from their program, as the Veterans did
not consent to its use outside of the GRECC program; nor did Ms. Burns or the other VA
occupational therapist depicted on the video tape consent to the use of their images.

33.    Peggy W. Kearns, M.S., CHE, Freedom of Information Act Officer, issued the
following response in her letter to the UMN dated March 1, 2005: "The following documents
and administrative records maintained by this facility are attached:  Videotape of Toast Subtask
of the CPT; De-identified copy of consent form used for videotape; Cognitive Performance Test,
2002 Manual; Cognitive Performance Test (1991); Cognitive Performance Test (1986)."  All
CPT manuals clearly displayed Copyright notification on the cover of the manual, which the VA
recognized at that time.  Further, VA Attorney, Pamela Saunders, Esq., in her letter dated
January 10, 2005, states: "These forms do not permit release of the veterans' pictures outside of
the VAMC."  Please see Exhibit G.

34.    Plaintiff was accused of accepting compensation from prohibited sources, when
nearly all her teaching activities were conducted on tour with VA pay, and for which she never
received any additional compensation.  Plaintiff infrequently accepted a $600 compensation in
her official capacity under 5 C.F.R. 2635.807 for the GRECC sponsored education program only
if taught off-tour, as on a Saturday.  Chief Smoot outlined the policy to Taylor at the AIB on
November 8, 2019, Taylor asked: "You adjust the shift or comp time? " Smoot answered: "We
adjust the shift or do comp time or travel status, if off site.  But the locations we speak at do
always offer honorariums for the speaking.  If you do Annual Leave, you could do the
honorarium, but I think people choose to make more money on official duty talking about our
stuff." (Smoot AIB at 43-44).  Plaintiff testified before the AIB on October 11, 2019 that she was
denied tour changes for Saturday education programs to be paid on tour.

35.    Supervisor McCarten confirmed that Plaintiff was teaching the GRECC
authorized CPT education program in her official capacity, which included Saturdays.  In his
testimony before the AIB on November 7, 2019, Brian Taylor asked:  "So, if she says she wants
to go speak at the Mayo, but Mayo doesn't have time for us except for on Saturdays, the only
way I can speak to Mayo residents or Mayo providers is if I can do it on Saturday and she came

Theressa A. Burns, Plaintiff
Additional Sheets

to you with that request, would you be reasonable to accommodating that request?" McCarten answered: "Yes." Taylor goes on to ask: "Is it a specific Task of hers in her performance to expand the CPT out of Minneapolis, Minnesota Region?" McCarten answered: "Yes, in that our mission is to expand clinical models of care. This is a clinical model, yes." (McCarten AIB at 55-58).

36.    Dr. McCarten testified he also taught education programs in the community. His testimony before the AIB on November 7, 2019, states: "I direct the GRECC memory loss clinic. I have educational responsibilities, primarily towards resident physician trainees; most specifically, neurology trainees. I do presentations periodically regarding my area of expertise, dementia, and I do research in collaboration with other GRECC investigators and with the University of Minnesota." Taylor asked: "And when you do the presentations, are those here on site? Are those out in the community?" McCarten answered: "Both." Taylor asked: "And when you give those, are you on VA time when you're offsite or are you on your own time?" McCarten answered: "Generally it's on VA time; if it's in the evening or on a weekend, I would still consider myself acting on VA time." (McCarten AIB at 7-8). Plaintiff also had educational responsibilities in her role as the occupational therapist clinical specialist for the GRECC.

37.    Chair Brian Taylor concluded the AIB investigation on January 3, 2020 and filed his report of accusations regarding the professional practice and conduct of Ms. Burns. Despite that Taylor had collected substantial evidence to the contrary, his report cited numerous violations under 5 C.F.R. 2635 and falsely characterized the GRECC OT clinical practice and educational programs as personal programs for profit. However, the clinical practice program was a physician ordered service, and the GRECC OT education program, had been a formal GRECC outreach education program since 2010. Both programs were official duties listed on Plaintiff's official position description since 2010.

38.    Chair Brian Taylor charged Burns with receiving royalties from the GRECC sponsored education program. Burns leased her property to Maddak, Inc. in 2006 to produce an optional kit of CPT props of the common household items listed in the manual. The CPT manual lists the standard common household items required for each CPT task and practitioners are free

15

Theressa A. Burns, Plaintiff
Additional Sheets

to gather their own props.  Ms. Burns is not involved in the marketing or sales of the optional kit
produced by Maddak and has no association with Maddak other than she receives an annual
royalty check.  Royalties had no bearing on the GRECC OT education program as there were no
sales of the CPT kit ever associated with these programs.  The recent letter of Mayo Clinic dated
February 2, 2023, confirms there were no sales of the CPT manual or kit associated with the June
8, 2019 GRECC education program.  Please see Exhibit H.

39.    Chair Brian Taylor charged Burns with profiting from the videotape previously
distributed in 2005 by the UMN, when in fact Ms. Burns filed charges to stop the use of the
unauthorized videotape to protect the Veterans on the tape who did not consent.  Brian Taylor
alleged in his AIB report of January 3, 2020, that the $22,000 awarded to Ms. Burns for
attorney's fees, was a financial profit related to sales of the CPT.

40.    Chair Brian Taylor used the AIB to investigate the refusal of Ms. Burns to apply
for a VA Patent for rights to the CPT, an already registered copyright.  In March of 2019, after
over 30 years of use of the CPT by the VA, and with full knowledge of her copyrights and
ownership, Ms. Burns was asked to convert her ownership title and to submit her intellectual
property as a shared property to the VA Information Technology Transfer Program.  However,
that program is for registering new inventions and not those already owned and widely publicly
disclosed (VHA Directive 1200.18).

41.    Pursuant to 28 U.S.C. section 1338(a), the federal courts have exclusive
jurisdiction over copyright cases.  Copyright law is the domain of federal courts not the Veterans
Administration or any other organization to facilitate transfers of title in controversial settings.
There are numerous parts of that federal law which favors authors, and the rights of ownership of
authors, especially regarding work made on a non-profit basis, as opposed to full-fledged
commercial settings.  The federal law favors the authors intent where the purpose is educational,
including especially seminars and other publications.

42.    Plaintiff provided a Letter to the AIB dated October 28, 2019, that outlined the
discriminatory practices she had previously reported to Chief Smoot.  These practices included

Theressa A. Burns, Plaintiff
Additional Sheets

the receptionist who would not check patients in for OT appointments putting Veterans at risk for their safety; and the practice of allowing uncredentialed staff to deliver credentialed occupational therapy patient care services without a professional license as is required by State and Federal laws. Chair Brian Taylor attempted to hand the letter back to Ms. Burns as unsubstantiated during her testimony before the AIB on November 15, 2019. When Plaintiff objected, Mr. Taylor took the Letter back and then filed it in his AIB Report of January 3, 2020, as exhibit 47.

43.    On May 11, 2020, Michael J. Armstrong, Director of the Extended Care and Rehabilitation Service Line issued his Proposed Removal Letter in a meeting with Ms. Burns. In his letter, he upheld the alleged charges of Brian Taylor and the AIB. At the meeting, he also threatened to report Ms. Burns to the Minnesota Department of Health and Human Services to have her professional license to practice occupational therapy removed. Michael J. Armstrong has since been promoted to Chief of Staff.

44.    On June 25, 2020, Ms. Burns met with Director Patrick J. Kelly to discuss the charges in the May 11, 2020, Proposed Removal Letter of Michael J. Armstrong. At the meeting, they discussed Plaintiff's long-standing GRECC clinical practice program and education programs, and the acceptance of honoraria allowed under 5 C.F.R. 2635.807 for those education programs. Plaintiff issued expert letters from the Minnesota Occupational Therapy Association (MOTA) dated June 12, 2020; and from Saint Catherine University dated June 16, 2020 that refuted any promotion or sales of the CPT at their respective institutions. Please see Exhibit I. Plaintiff also handed a formal Letter to Director Kelly dated June 25, 2020, that outlined the same discriminatory practices and patient safety issues she had previously reported to Chief Smoot and had cited in her Letter to the AIB of October 28, 2019.

45.    Ms. Burns was subsequently asked by Director Patrick J. Kelly to voluntarily retire via an Email request dated July 1, 2020, from Charity Hovre, VISN 23 EEO Manager. When Plaintiff declined the forced retirement, she was involuntarily removed from office by Director Kelly in a Decision Letter delivered to her home on July 31, 2020. The Decision Letter

Theressa A. Burns, Plaintiff
Additional Sheets

reiterated the false charges of the AIB and of the May 11, 2020 Proposed Removal Letter of
Michael J. Armstrong.


## COUNT 1:    WRONGFUL AND UNLAWFUL TERMINATION

46.    Allegations from paragraphs 10 - 45 are hereby restated and incorporated by
references.

47.    Ms. Burns had complied in all respects with her employment contract and the
official duties of her GRECC Occupational Therapist Clinical Specialist position since 2010.
Her official duties included both patient care and educational activities, including official
teaching and publishing activities.  All performance appraisals since 2010 up to until 2019 were
rated as outstanding for both patient care and for her authorized educational activities related to
the CPT model of care.

48.    An Administrative Investigative Board (AIB) was suddenly initiated in October of
2019 by Mandelaigh Smoot, Chief of Occupational Therapy, to investigate both the clinical
practice and the educational activities of Ms. Burns.  However, Chief Smoot had already decided
prior to her initiation of the AIB to decommission the GRECC clinical practice and the GRECC
clinic space of Ms. Burns.

49.    Plaintiff was charged by the AIB on January 3, 2020 with violations under 5
U.S.C. 2635 for teaching GRECC sponsored education programs, despite no violations under the
law were in fact substantiated during the AIB investigation.  On July 31, 2020, Plaintiff was
removed from office based on the false charges of the AIB initiated by Smoot.

50.    Plaintiff was wrongfully terminated based on false charges for unlawful reasons
including: Breach of Employment Contract (U.C.C section 1-201); Age Discrimination (29 U.S.
Code section 6230); and Retaliation for reporting unsafe patient practices including the misuse of
the CPT in the delivery of patient care services (5 U.S.C 2302(B)(8).

Theressa A. Burns, Plaintiff
Additional Sheets

51.    The acts of Defendants have been willful and deliberate, and despite the findings of the AIB.  The wrongful acts of Defendants have caused Ms. Burns substantial monetary damage in an amount yet to be determined.


## COUNT 11:   BREACH OF EMPLOYMENT CONTRACT

52.    Allegations from paragraphs 10 - 51 are hereby restated and incorporated by references.

53.    Ms. Burns' official Personnel Action Standard Forms, SF50s, categorized her employment contract and Tenure as a permanent position and the Employer contract under the Agency Master Agreement required cause for termination of employment.

54.    Plaintiff had an expectation of permanent employment and full retirement benefits at the promotional level she was denied.  During the AIB, a national upgrade in pay was going on for all VA occupational therapist clinical specialists who met the qualification standards. Plaintiff exceeded the qualification standards in terms of years of experience in her clinical specialist position and in her status as a subject matter expert within the profession.  Section 7- Applicability of Noncompetitive Actions of the Agency Master Agreement for Promotions states that the "Promotion of an incumbent that is reclassified to a higher grade without significant change in duties or responsibilities on the basis of a new classification standard and meets the legal requirements and qualification standards for promotion to the higher grade, the incumbent will be promoted." (VA Pamphlet 05-68 P70450).

55.    The acts of Defendants resulted in the forced and early retirement of Ms. Burns in violation of her express contract under U.C.C section 1-201.  The Breach of Employment Contract forced Ms. Burns to retire early below the promotional level and national upgrade in pay she was denied.  The wrongful acts of Defendants have caused Ms. Burns substantial monetary damage in an amount yet to be determined.

Theressa A. Burns, Plaintiff
Additional Sheets

## COUNT 11I:  AGE DISCRIMINATION

56.    Allegations from paragraphs 10 - 55 are hereby restated and incorporated by references.

57.    Defendants had decided prior to the AIB to decommission the clinical practice and GRECC clinic space of Ms. Burns.  Chief Smoot then gave promotions to much younger staff who would assume the CPT practice in other occupational therapy clinics.

58.    Chief Smoot had requested the updated CPT education program and CPT task props for the other clinics from Burns prior to the AIB, at the same time the decision was made to decommission the clinical practice and clinic space of Ms. Burns.

59.    The acts of Defendants have been willful and deliberate in eliminating the 35-year professional practice of Ms. Burns and in reassigning her practice and promotional level to much younger occupational therapists on staff, in violation of 29 U.S. Code section 623.  The wrongful acts of Defendants have caused Ms. Burns substantial monetary damage in an amount yet to be determined.

## COUNT 1V:  RETALIATION FOR PROTECTED ACTIVITY

60.    Allegations from paragraphs 10 - 59 are hereby restated and incorporated by references.

61.    Ms. Burns provided a Letter to the AIB dated October 28, 2019, that outlined the discriminatory practices she had previously and repeatedly reported to Chief Smoot.  These practices included the receptionist who would not check patients in at the front desk for their OT appointments putting Veterans at risk for their safety; and the practice of allowing uncredentialed staff to deliver credentialed occupational therapy patient care services without a professional

Theressa A. Burns, Plaintiff
Additional Sheets

license as is required by State and Federal laws. Ms. Burns had also reported to Chief Smoot the safety concerns with occupational therapists giving only parts of the CPT evaluation, resulting in faulty test scores and interpretations of daily abilities that were meant to be based on a full CPT evaluation.

62.    In October of 2019, an Administrative Investigative Board (AIB) was suddenly initiated by Chief Smoot. The AIB investigation was initiated in retaliation for reporting these unsafe patient practices which included plans for substandard use of the CPT model in primary care.

63.    On June 25, 2020, Ms. Burns met with Director Patrick J. Kelly to discuss the charges in the May 11, 2020, Proposed Removal Letter of Michael J. Armstrong. At the meeting, Plaintiff handed her Letter to Director Kelly dated June 25, 2020, that outlined the same discriminatory practices and patient safety issues cited in her Letter to the AIB of October 28, 2019. Ms. Burns was subsequently asked by Director Patrick J. Kelly to voluntarily retire via an Email request dated July 1, 2020, from Charity Hovre, VISN 23 EEO Manager. When Plaintiff declined the forced retirement, she was involuntarily removed from office by Director Kelly in a Decision Letter delivered to her home on July 31, 2020.

64.    The Retaliation acts of Defendants have been willful and deliberate all in violation of Whistle-blowing laws that protect employees who report activities that are unlawful or harm the public interest. Article 17 – Employee Rights of the Agency Master Agreement Section 10 – Whistle-Blower Protection Act states: "Consistent with the Whistleblower Protection Act, currently codified at 5 U.S.C 2302(B)(8), employees shall be protected against reprisal of any nature for the disclosure of information which the employee reasonably believes evidences a violation of law, rule or regulation, or evidences a substantial and specific danger to public or employee health or safety." (VA Pamphlet 05-68 P70450).

Theressa A. Burns, Plaintiff
Additional Sheets

## COUNT V:   DEFAMATION

65.    Allegations from paragraphs 10 - 64 are hereby restated and incorporated by references.

66.    Defendants knowingly made false and malicious accusations that resulted in the termination of Ms. Burns' 35 years of civil service.  The false charges levied under 5 C.F.R. 2635 are listed on her final SF50 Personnel Action Standard Form and are now part of her permanent employment record, a record that had previously included only outstanding performance appraisals over her 35 years of civil service.

67.    The Defamation acts of Defendants under 28 U.S. Code section 4101 have been willful and deliberate and were knowingly used to terminate Plaintiff after her 35 years of exemplary civil service.  The Defamation acts of Defendants have caused Ms. Burns substantial damage to her professional reputation and monetary damage in the loss of income and a substandard retirement annuity below the promotional level that was denied.

Date: February 28, 2003                    Theressa a. Burns

Theressa A. Burns, OTR/L
Occupational Therapist Clinical Specialist
Attorney Pro se
795 Butternut Avenue
Saint Paul, MN 55102
(H) 651-292-9648
(C) 651-895-9011
Email:  burnscpt@gmail.com