UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Theressa A. Burns, | Case No. 23-CV-00478 (JMB/DJF) |
| Plaintiff, | |
| v. | **ORDER** |
| Douglas Collins, *Secretary, Department of Veteran Affairs*,[1] | |
| Defendant. | |

---

Theressa A. Burns, St. Paul, MN, self-represented Plaintiff.

Ana H. Voss, United States Attorney's Office, Minneapolis, MN, for Defendant United States Secretary of Veterans Affairs Douglas Collins.

---

This matter is before the Court on Defendant United States Secretary of Veterans Affairs Douglas Collins's (the VA's) motion for summary judgment. (Doc. No. 59.) In this action, Burns alleges that the VA discriminated against her on the basis of her age, in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, et seq. For the reasons explained below, the Court grants the motion and dismisses this action.

---

[1] Since this matter was filed, Douglas Collins has replaced Denis McDonough as the Secretary of Veterans Affairs. The case caption in this Order has been altered to reflect this change. Collins has replaced McDonough under Federal Rule of Civil Procedure 25(d) with respect to Burns's claims against McDonough in his official capacity.

## STATEMENT OF UNDISPUTED FACTS

### A.    Burns's Employment with the VA

In 1985, the Minneapolis Veterans Affairs Medical Center (Minneapolis VA) hired Burns as an occupational therapist. (Doc. No. 62-1.) In 1987, Burns transitioned into the role of Occupational Therapist, Research Assistant within the Geriatric Research, Education and Clinical Center (GRECC).[2] (Doc. No. 80-2 at 2, 4.) Burns incorporated an occupational therapy assessment tool, known as the "Cognitive Performance Test" (CPT) in a longitudinal study of disease progression in veterans with dementia. (*Id.* at 2; Doc. No. 51 ¶ 10.) The VA continued to use the CPT to measure the cognitive function of veterans who were suspected of suffering from dementia. (Doc. No. 51 ¶¶ 11, 14.)

In 2010, Burns was promoted to Occupational Therapist, Clinical Specialist within the GRECC. (Doc. No. 62-3; Doc. No. 80-2 at 4.) Burns was the sole occupational therapist within the GRECC. (Doc. No. 62-2 ¶ 14; Doc. No. 62-3 at 1; Doc. No. 70 at 11:15–16.) Her role had clinical, research, and educational components. (Doc. No. 62-3.) With regard to the educational component of her work, the VA paid Burns to "[d]isseminate[] new knowledge and research findings through publications, presentations at scientific meetings, and training and education programs for students, fellows and

---

[2] The VA has two departments with occupational therapy components: (1) the Extended Care and Rehabilitation (EC&R) service line, which houses the GRECC; and (2) Physical Medicine and Rehabilitation (PM&R) group, which houses the Occupational Therapy Department. (Doc. No. 62-3 at 4; Doc. No. 63.) The GRECC is a specialized unit within the VA that focus on serving aging veterans through research, education, and clinical innovation. *Geriatric Research Education and Clinical Center (GRECC)*, U.S. Dep't of Veterans Affairs, https://www.va.gov/grecc/index.asp [https://perma.cc/V32W-DQ63].

professional staff." (*Id.* at 4 ¶ C.1.) She was supervised by the GRECC's Medical Director, Riley McCarten. (Doc. No. 69 at 6:18–24.)

### B.  Investigation of Burns and Revised Qualification Standards

At some point, Mandyleigh Smoot, Chief of the Occupational Therapy Department, raised concerns to a VA staff attorney about Burns misusing her office and not complying with VA ethical guidelines. (Doc. No. 63-1; Doc. No. 74 at 7:19–9:9; Doc. No. 80-1 at 16:19–17:9.) In response to those concerns, in October 2019, the Minneapolis VA's Medical Director, Patrick Kelly convened an Administrative Investigation Board (AIB) to "conduct a thorough investigation into the facts and circumstances regarding allegations into potential conflict of interest and/or misuse of government position," and to determine whether Burns had violated 5 C.F.R. § 2635.[3] (Doc. No. 63-5 at 1; Doc. No. 68 at 5:15–19; Doc. No. 74 at 8:3–5.) In its investigation, the AIB reviewed policies and documentation and interviewed witnesses, including Burns.

On December 13, 2019, amid this investigation, the VA revised its nationwide qualification standard for occupational therapists.[4] (*See* Doc. No. 64-9.) These revisions increased the assignment of the clinical specialist position in which Burns was working from a GS-12 to a GS-13 grade level. (*Id.* at 1 ¶ 2.f.) In addition to satisfying the basic requirements for employment, those seeking promotion to the GS-13 level needed to meet—to Kelly's satisfaction—several additional criteria, including the following:

---

[3] This section sets forth the ethical conduct standards of employees in the executive branch.

[4] Agencies are required to establish qualification standards for positions within the federal government. 5 C.F.R. §§ 302.202; 319.301.

education; experience; licensure requirements; and demonstration of five categories of knowledge, skills, and abilities (KSAs).  (*Id.* at 2 ¶ 2.b, 8 ¶ d; Doc. No. 64-10.)

### C. Burns's Request for Promotion and Subsequent Separation

In late December 2019, Smoot informed McCarten by email of the new qualification standards and the process that Burns needed to follow in order to be considered for the role, including the following steps for McCarten to take: reviewing the GS-13 qualification standards to determine if Burns met those standards, writing Burns's functional statement to match the qualifications and the assignment, ensuring Burns responded to the KSAs, writing a letter of support, and working with Human Resources to submit the request for promotion.  (Doc. No. 64-10 at 2.)  In February 2020, McCarten responded to Smoot's email, indicating that Burns "completed her functional statement," noting that he agreed with her statement, and asking if he needed to do anything else.  (*Id.* at 1–2.)  Smoot responded that same day, explaining that "[t]here is definitely more that needs to be done," and including a list of several additional steps that would need to be taken to submit Burns's request for promotion.  (*Id.* at 1.)  Later in February, Burns's request for promotion was submitted.  (Doc. No. 64-11 at 1; Doc. No. 67 at 31:6–32:1.)  McCarten's letter of support states that he recommended Burns for the GS-13 position because Burns "successfully [met] the criteria for the position."[5]  (Doc. No. 80-2 at 34.)

Meanwhile, in January 2020, the AIB issued a report summarizing its investigation.  (Doc. No. 63-6 at 4.)  In its report, the AIB concluded that Burns violated five regulatory

---

[5] The record contains few details regarding the content of Burns's promotion request.

4

provisions. (*Id.* at 2–3.) The AIB also investigated Burns's allegations of harassment (unrelated to age) but could not substantiate them. (*Id.* at 3; Doc. No. 63-8.) In March 2020, Burns's request for promotion was put "on hold" pending the final outcome of the investigation and any disciplinary action. (Doc. No. 64-11 at 1; Doc. No. 68 at 9:7–10.) Burns was never reclassified.

In May 2020, after receiving the AIB's report, the Director of the EC&R service line proposed that Burns be removed from her position. (Doc. No. 63-9 ¶¶ 57–58, 83–84; Doc. No. 64.) In July 2020, after reviewing the proposed removal and Burns's response, Kelly decided to remove Burns from her position effective August 9, 2020. (Doc. No. 64-3; Doc. No. 68 at 6:12–15.) On August 7, 2020, two days before the effective date of her removal, Burns applied for immediate retirement, which the VA granted. (Doc. No. 67 at 44:4–21; Doc. No. 64-8; Doc. No. 64-6; Doc. No. 63-9 ¶¶ 78–80; Doc. No. 64-7 ¶ 45.) As a result, Burns's official personnel file shows that she retired in lieu of adverse action, and Burns acknowledges, that she retired from the VA before the effective date of her removal. (Doc. No. 64-6; *see* Doc. No. 64-2 at 12 ¶ I., 15 ¶ AA ("I never told them of my date of final separation, August 7, 2020. The facility received notice that day.").)

D.   **Procedural History**

In September 2020, Burns filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) based on retaliation and age and sex discrimination. (Doc. No. 64-16 at 3.) In May 2021, the EEOC issued a final decision, which Burns appealed. (*Id.*; Doc. No. 80-1 at 56.) In September 2021, the Administrative

Law Judge dismissed Burns's appeal on grounds that Burns had "not raised facts which, if proven, could show that her retirement was involuntary." (Doc. No. 64-16 at 8.)

In February 2023, Burns filed this suit. In her Amended Complaint, Burns brings a claim against the VA under the ADEA. (*See* Doc. No. 51; *see also* Doc. No. 25 at 6–7 (construing Burns's wrongful termination claim as part of her ADEA claim).) Burns claims that the VA violated the ADEA when it failed to promote her and when it removed her from her position. She seeks retroactive benefits and an award equal to what she would have received if she had been upgraded to the GS-13 pay scale.

## DISCUSSION

The VA now moves for summary judgment. Because the record presented could not lead a rational trier of fact to find that the VA failed to promote Burns or removed Burns from her position[6] on the basis of her age, the Court grants the VA's motion.

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Of course, a fact is "material" only if its resolution might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To survive the motion, the non-moving party may not "rest on

---

[6] Under ADEA's federal-sector provision, "[a]ll personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a); *see also Babb v. Wilkie*, 589 U.S. 399, 404 (2020). The ADEA does not define the term "personnel action." However, the Civil Service Reform Act of 1978, which governs federal employment and has been applied to ADEA claims, broadly defines it to include most employment-related decisions—an interpretation consistent with the term's general usage. 5 U.S.C. § 2302(a)(2)(A); *Babb*, 589 U.S. at 405. Both of the challenged decisions in this case fall within this definition.

mere allegations or denials but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation omitted).

For this case to proceed to trial, the record presented must contain sufficient circumstantial evidence that Burns's age was the "but-for" cause of any adverse employment action. *Smothers v. Rowley Masonic Assisted Living Cmty., LLC*, 63 F.4th 721, 727 (8th Cir. 2023); *Canning v. Creighton Univ.*, 995 F.3d 603, 611 (8th Cir. 2021).[7] Under the familiar *McDonnell Douglas* burden-shifting framework, Burns bears the initial burden to establish a prima facie case of age discrimination. *McDonnell Douglas Corp. v.*

---

[7] To the extent that portions of the Memorandum in Opposition to the VA's motion can be construed as an argument that the record contains direct evidence of age discrimination, the Court disagrees with that characterization of the record. Direct evidence of discrimination means evidence of "comments or statements indicating discriminatory intent, where those comments are made by people with decision-making authority." *Hutton v. Maynard*, 812 F.3d 679, 683–84 (8th Cir. 2016). However, "stray remarks in the workplace, statements by nondecisionmakers, [and] statements by decisionmakers unrelated to the decisional process do not constitute direct evidence." *Aulick v. Skybridge Ams., Inc.*, 860 F.3d 613, 620 (8th Cir. 2017) (quotation omitted). Here, Kelly alone had decision-making authority over the challenged promotion and removal decisions. (*See* Doc. No. 64-3; Doc. No. 64-10 at 1; Doc. No. 64-9 at 2 ¶ 2.b.) The record contains no direct evidence, however, of Kelly's animus or discriminatory motive, and Burns herself testified that Kelly did not say "anything at all" about her age. (Doc. No. 67 at 37:8–16.) Instead, Burns directs the court to statements made by Smoot that Burns believes indicates Smoot's age-related animus. (*See, e.g.*, Doc. No. 72 at 7:20–9:7 (referring to the CPT as outdated and describing Burns's skillset as limited); Doc. No. 67 at 5:12–6:11 (referring to Burns's skills as "outdated" and the CTP as "old" and in need of an update).) These "stray remarks," made by a "nondecisionmaker," *Aulick*, 860 F.3d at 620, do not constitute direct evidence. Absent any evidence that Kelly was motivated by Burns's age, no rational trier of fact could find in Burns's favor based on direct evidence.

*Green*, 411 U.S. 792, 802–03 (1973). If she does, then the burden shifts to the VA to articulate a legitimate, non-discriminatory reason for the challenged action. *Id.* If the VA carries this burden, then the burden shifts back to Burns to show that the VA's stated reason is merely a pretext for age discrimination. *Id.* at 804–05. The Court separately addresses the elements of a prima facie case for each challenged employment decision.

I. **FAILURE TO PROMOTE**

To establish a prima facie case for failure to promote, Burns must establish, by a preponderance of the evidence, each of the following four factors:

> (1) that she is a member of a protected group; (2) that she was qualified and applied for a promotion to a position for which the employer was seeking applicants; (3) that despite her qualifications, she was rejected; and (4) that other employees of similar qualifications who were not members of a protected group were promoted at the time plaintiff's request for promotion was denied.

*Lyoch v. Anheuser-Busch Co., Inc.*, 139 F.3d 612, 614 (8th Cir. 1998); *see Halsell v. Kimberly-Clark Corp.*, 683 F.2d 285, 290 (8th Cir. 1982) (noting that this burden is "not onerous" but must be proven "by the preponderance of the evidence"). The Court concludes that no rational trier of fact would find that the record presented establishes the fourth element: that the VA promoted other, similarly qualified employees who were under age forty to the GS-13 position.

The Court must construe narrowly the legal term "similarly situated" to include only other individuals who "dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Canning*, 995 F.3d at 614 (quotation omitted). Here, Burns references

two occupational therapists, younger than she, who she believes now "provide[] the service that was once delivered by Ms. Burns." (Doc. No. 79 at 4.)[8] There is no evidence in the record, however, that McCarten supervised either of these two identified persons or that anyone promoted to the GS-13 role "dealt with the same supervisor" as Burns. In fact, the record includes evidence to the contrary. For instance, the parties do not dispute that Burns was the sole occupational therapist/clinical specialist in the GRECC. (Doc. No. 62-2 ¶ 14; Doc. No. 62-3 at 1; Doc. No. 70 at 11:15–16.) Similarly, the record establishes that Burns's job duties included an important educational component. (Doc. No. 62-3). The two identified occupational therapists, however, offer a "materially changed" version of the service that Burns offered—one without the educational component. (Doc. No. 67 at 28:5–29:8.) These distinctions are simply too significant to survive summary judgment,[9] the record does not establish the fourth prima facie element.[10]

---

[8] Burns also focuses on employees who were not occupational therapists, including one employee who conducted research and an employee who had a shared patent with the VA. (*See* Doc. No. 51 ¶¶ 21, 51, 59; Doc. No. 67 at 24:23–25:1.) These two employees, however, had distinct jobs and job duties from Burns such that neither satisfy the definition of similarly situated persons.

[9] For the purpose of identifying a valid comparator, the Court also has to consider that Burns was facing ongoing disciplinary proceedings. The absence of such proceedings would constitute a "mitigating or distinguishing circumstance," *Canning*, 995 at 614, that further distinguish other GS-12 occupational therapists from Burns.

[10] The Court is also concerned that Burns cannot establish the second element of the prima facie case: that she was qualified for the GS-13 role. Here, those seeking promotion needed to satisfy several objective criteria. (Doc. No. 64-9 at 2 ¶ 2.b, 8 ¶ d; Doc. No. 64-10.) Burns identifies only two pieces of evidence: her own statements and a one-paragraph letter from McCarten. (Doc. No. 67 at 30:19–31:5; Doc. No. 80-2 at 34.) McCarten was not a decisionmaker, however, and the Court is aware of no other evidence concerning whether Burns satisfied these objective requirements. *See Lyoch*, 139 F.3d at 615 (concluding that

## II. REMOVAL

To establish a prima facie case of age discrimination in the VA's removal decision, Burns must establish, by a preponderance of the evidence, the following four elements: "(1) she is over 40; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) substantially younger, similarly situated employees were treated more favorably." *Faulkner v. Douglas Cnty. Neb.*, 906 F.3d 728, 734 (8th Cir. 2018); *see Halsell*, 683 F.2d at 290. The Court concludes that no rational trier of fact would find that the record presented establishes the third or fourth elements.[11]

With regard to the third element, the record presented cannot support a finding that Burns suffered an adverse employment action. An adverse employment action is one that "produces a material employment disadvantage." *Kerns v. Cap. Graphics, Inc.*, 178 F.3d 1011, 1016 (8th Cir. 1999) (quotation omitted). "Termination, cuts in pay or benefits, and changes that affect an employee's future career prospects are significant enough to meet the standard, as would circumstances amounting to a constructive discharge." *Id.* (citation omitted). Here, the record evidence shows that in July 2020, Kelly issued his decision to

---

a plaintiff alleging failure to promote given "vague," "secretive," and "subjective" criteria for promotion can survive summary judgment based on the plaintiff's own statements and those of coworkers, but requiring a higher standard when the case involves "objective hiring criteria applied to all applicants"). Moreover, the record includes evidence that, to be considered for promotion to the GS-13 position, applicants could not be subject to any ongoing AIB investigations. (Doc. No. 64-11 at 1; Doc. No. 68 at 9:7–10.) The Court need not determine whether this record establishes the second element, however, in light of its decision concerning the lack of valid comparators.

[11] The VA concedes that Burns is over 40, and unlike the GS-13 position, the evidence in the record is sufficient to establish that Burns was qualified for the GS-12 position.

remove Burns, effective August 9, 2020. (Doc. No. 64-3 ¶ 1.) However, on August 7, 2020, two days before the effective date of her removal, Burns applied for, and the VA granted her, immediate retirement. (Doc. No. 67 at 44:4–21; Doc. No. 64-8; Doc. No. 64-6 (reflecting that Burns retired in lieu of involuntary action); Doc. No. 63-9 ¶¶ 77–80; Doc. No. 64-7 ¶ 45; Doc. No. 64-2 at 12 ¶ I., 15 ¶ AA ("I never told them of my final date of separation, August 7, 2020. The facility received notice that day.").) Burns states that she was forced to retire, but the record contains no evidence that the VA coerced Burns into requesting voluntary retirement, and, in fact, the record includes evidence that Burns did not face the loss of her future retirement benefits. (*See* Doc. No. 64-3 ¶ 5 (noting that Burns was "retained in pay and duty status until the effective date of [her] removal, August 9, 2020"); *see also* 5 U.S.C. §§ 8312–8315 (explaining the limited circumstances under which federal employees' retirement benefits may be forfeited after vesting)). Absent any evidence of coercion or loss of benefits, no rational trier of fact could conclude that the VA's decision to remove Burns constitutes an adverse action.[12]

---

[12] Although Burns occasionally references constructive discharge and involuntary retirement, Burns has not raised a constructive discharge claim in this lawsuit nor has she alleged that the VA intentionally created intolerable working conditions to force her to quit. *See Ames v. Nationwide Mut. Ins. Co.*, 760 F.3d 763, 766 ("To prove constructive discharge, an employee must show that the employer deliberately created intolerable working conditions with the intention of forcing her to quit.") (citation omitted); *see also, e.g.*, *Magyar v. U.S. Postal Serv.*, No. 18-13447, 2019 WL 1989207, at *6–7 (E.D. Mich. May 6, 2019) (concluding that an employee had not suffered an adverse employment action where his employer had notified him of the effective date of his removal but he elected to retire before that date and had not brought a constructive discharge claim). Moreover, the Court observes that the Merit Systems Protection Board previously dismissed Burns's claim for constructive discharge and involuntary retirement because Burns had "stated she was removed from employment and then she decided to retire after 35 years of service" and because "[s]he has a retirement in her record, not removal." (Doc. No. 64-16 at 8.)

With regard to the fourth element, the record also cannot establish that the VA treated similarly situated employees more favorably than Burns. As previously discussed, there is no evidence in the record presented that any other occupational therapists "dealt with" McCarten as a supervisor, were "subject to the same standards" as Burns was, or "engaged in the same conduct" as Burns did "without any mitigating or distinguishing circumstances." *Canning*, 995 F.3d at 614. In addition to the analysis above, the Court also notes that the parties do not dispute that the VA never hired another GS-12 occupational therapist in the GRECC after Burns retired. (Doc. No. 67 at 28:1–4 (Burns testified that the VA "closed [Burns's] entire service down" and "[t]he clinic no longer exists").) Absent any evidence regarding the existence of any substantially younger, similarly situated employees, no rational trier of fact could find in Burns's favor on the fourth prima facie element.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT Defendant United States Secretary of Veterans Affairs Douglas Collins's motion for summary judgment (Doc. No. 59) is GRANTED, and this action is DISMISSED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  March 27, 2025                         /s/ *Jeffrey M. Bryan*
                                                            Judge Jeffrey M. Bryan
                                                            United States District Court